UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHRISTOPHER ENGLISH | * | CIVIL ACTION NO. 21-400 |
| VERSUS | * | SECTION: "A"(1) |
| SGT. MICHAEL PHILIPS, ET AL. | * | JUDGE JAY C. ZAINEY |
| | * | MAGISTRATE JUDGE JANIS VAN MEERVELD |

**ORDER AND REASONS**

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 57)** filed by Defendants, the State of Louisiana through the Louisiana Department of Public Safety and Corrections ("DPSC"), Sgt. Billy Mersereau, Michael Phillips, and W. Keith Bickham. The plaintiff, Christopher English, opposes the motion. The motion, submitted for consideration on October 26, 2022, is before the Court on the briefs without oral argument.[1] For the reasons that follow, the motion is DENIED.

**I.   Background**

The plaintiff, Christopher English, filed this action in the 22nd Judicial District Court, Washington Parish, to recover for damages that he alleges in conjunction with his time as an inmate at the Rayburn Correctional Center ("RCC"), located in Angie, Louisiana. The defendants removed the case to federal court.[2]

English sustained significant injuries during an encounter with corrections officers on July 28, 2020. The two corrections officers involved were Michael Phillips and Billy

---

[1] The motion for summary judgment was actually taken up for consideration upon receipt of the defendants' reply memorandum on November 7, 2022. The Court extended the deadline for the defendants to file a reply because the Court had allowed the plaintiff to file an amended opposition after the submission date. (Rec. Doc. 67, Order).

[2] Of course, the State through DPSC has waived Eleventh Amendment immunity by removing the case to federal court. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002).

Mersereau. Phillips and Mersereau were employed at the jail when the incident at issue occurred, both being either employees of RCC and/or the DPSC or both.[3] W. Keith Bickham served as the warden of RCC when the incident occurred.[4] English's claims against the defendants are based on federal law (42 U.S.C. §§ 1983 & 1988) as well as Louisiana state law.

English's rendition of the events of July 28, 2020 is taken from his sworn deposition testimony and his declaration.[5] On July 28, 2020, English had two encounters with corrections officers that occurred minutes apart. Prior to the first incident, English had been housed on the Snow dormitory tier at RCC. For disputed reasons that are not material to the issues raised in the motion currently before the Court, on the afternoon of July 28, 2020 at about 3:00 p.m., Mersereau and Philips moved English from the Snow unit to the Sun 4L tier which serves as a segregation or lock-up unit at RCC.[6] In accordance with standard

---

[3] Phillips was no longer employed with RCC and/or DPSC when the case was removed from state court. (Rec. Doc. 1, Notice of Removal ¶ 6 n.4).

[4] When the case was first filed English was not certain whether the warden at the time of the incident was Robert Tanner or his replacement, W. Keith Bickham. (Rec. Doc. 17, Order and Reasons at 3 n.3). Subsequently, the Second Amended Complaint (Rec. Doc. 33) dropped Tanner as a defendant and added Bickham so Tanner was dismissed from the case without prejudice. (Rec. Doc. 35, Order).

[5] Until the defendants' Reply was filed, English and Mersereau were the only two witnesses to the events of July 28, 2020 who provided accounts of what happened that day that are based on personal knowledge—Donnie Seal (Defendants' Exhibit B) was not a witness to the events of July 28th so he cannot testify as to those events; the same holds true for expert witness Kerry Najolia (Defendants' Exhibit C). English has provided a declaration under penalty of perjury (Rec. Doc. 68-2) and his sworn deposition testimony (Rec. Doc. 68-12), Mersereau has provided a declaration (Rec. Doc. 57-9), and the Reply includes an Exhibit J that is Phillips's declaration (Rec. Doc. 74-1). Although these documents are not in an admissible form for trial, English, Mersereau's, and Phillips's testimony would be admissible at trial. Evidence offered for summary judgment purposes need not yet be in a form admissible at trial, but the party offering the evidence needs to be able to demonstrate that it can be put into an admissible form by the time of a trial. *In re Deepwater Horizon*, 48 F.4th 378, 385 (5th Cir. 2022) (citing *Lee v. Offshore Logistical & Transport, L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017)).

[6] According to English, the move to Sun tier was based on a false report made by corrections officer Kathy Massey to the effect that English had touched her forearm while sexually aroused.

procedure, upon arriving at Sun unit English was brought to the shower cell to be strip searched. English was given a jumpsuit to wear, which didn't fit so it was not covering his upper body and was just tied around the waist. English was handcuffed behind his back. Mersereau and Phillips then walked English down the tier to cell #11 without incident. English was then placed on his knees facing the wall opposite cell #11 (which is contrary to normal practice) while Mersereau and Phillips performed a "shakedown" of cell #11.[7]

English claims that Mersereau and Phillips then stood him up, turned him around, and slammed him onto the concrete floor face-first just outside of cell #11. (Rec. Doc. 68-12, English deposition at 17). Mersereau was then grinding English's face into the concrete and had either his knee or elbow on English's neck. (*Id.*). Phillips was on the ground with English and he was on top of him. (*Id.*). Other corrections officers then came to assist and English was placed in leg shackles; they walked English down to the triage medical unit to see the nurse.[8] English testified that his face hurt after that encounter and his eye was

---

English contends that video evidence later confirmed his contention that no such incident had occurred but once the video evidence demonstrated the falsity of Massey's allegation, she was allowed to change the accusation to make it conform to English's whereabouts on the day in question. Whether the incident with Massey actually occurred is disputed but not material at this juncture. It does serve, however, as the backdrop for why Mersereau and Phillips were moving English to the Sun 4L tier on July 28, 2020, and potentially as the reason for why Mersereau and Phillips might have attacked English without provocation, which is English's contention in the case. The Court assumes that the "previous rule violation" referenced in Mersereau's declaration is the Massey incident. (Rec. Doc. 57-9, Mersereau declaration ¶ 2). English posits that Mersereau and Phillips were acting pursuant to an order from supervisor Truly Dillon, who is a close friend of Massey and her husband. (Rec. Doc. 68-2, Declaration). Neither Mersereau nor Phillips identified the superior who directed them to move English on that day.

[7] According to English, the inmate is normally placed facing the cell because the purpose of the "shakedown" or search is to make sure that there is no contraband in the cell, and the inmate is supposed to be allowed to watch and witness the search in order to avoid a subsequent allegation that something was planted in the cell. English had not been in cell #11 when the shakedown occurred so he questions why a search was even necessary. There is no answer in the record for why English had been placed facing the wall during the shakedown that day.

[8] Even before he was shackled at the ankles, English contends that he could not move his legs during the first incident because the ill-fitted jumpsuit had slipped down from his waist and was around his legs. (Rec. Doc. 68-12, English deposition at 57).

injured. (*Id.* at 19). According to the medical record of that visit there were no visible signs of injury, there were no complaints of pain, and no treatment was needed at the time. (Rec. Doc. 57-8, Exhibit H at 1). If the nurse's notes are accurate then it is a mystery why the officers brought English to the medical facility in the first place.[9]

After leaving the medical facility English was placed on his knees again at the entrance of the Sun tier or just outside of it. (*Id.* at 22, 23). English was left in this position

---

[9] The reason that the Court mentions the accuracy of the medical record is that English testified that after the first incident his face and eye were swelling and that he was complaining that his neck and face and eye hurt. (Rec. Doc. 68-12, English deposition at 19-21, 76). And again, there must have been some reason for Mersereau and Phillips to bring English to the nurse after the first incident.
   The defendants have argued that the medical record following the first incident establishes that English sustained no injuries from that encounter and that he therefore does not have an actionable excessive force claim based on the first incident. While it does seem likely that the bulk of the serious injuries were sustained in the second encounter, this does nothing to weaken English's case for two reasons.
   First, English has not attempted to plead two separate excessive force claims based on the two encounters nor should he have attempted to do so. The two incidents at cell #11 occurred within minutes of each other—the time on the medical record following the first incident is noted as 3:17 p.m., and the time on the medical record following the second incident is noted as 3:25 p.m. (Rec. Doc. 57-8 Exhibit H). While it may be helpful when recounting the events of that afternoon to refer to a first and a second incident, the incidents form part of the same encounter with Mersereau and Phillips on July 28, 2020, are res gestae, and properly comprise a single excessive force claim against these two defendants. Included within this excessive force claim is English's allegation that Mersereau and Phillips placed English in a painful "chicken wing back" hold when transporting him down the tier after the second incident, and that they did so solely for the purpose of needlessly inflicting pain on him. (Rec. Doc. 68-12, English deposition at 59-60).
   Second, the defendants' argument, which is premised on the lack of sufficient injury, fails to recognize that excessive force claims under § 1983 are not governed by a single generic standard. *Graham v. Connor*, 490 U.S. 386, 393 (1989). The validity of an excessive force claim must be judged by reference to the specific constitutional standard which governs the right at issue, in this case the Eighth Amendment's ban on cruel and unusual punishment. The defendants have cited in support of their "injury" argument decisions that involve Fourth Amendment excessive force claims; English was a convicted inmate when his claim arose so his claim is governed by the Eighth Amendment not the Fourth Amendment. *Dawson v. Anderson Cnty., Tex.*, 769 F.3d 326, 329 (5th Cir. 2014) (Haynes, dissenting). The distinction is an important one. In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court reiterated the approach dictated by *Hudson v. McMillian*, 503 U.S. 1, 38 (1992), that in Eighth Amendment excessive force cases the focus is on the *force* employed and not on the measure of *injury*. *Bourne v. Gunnels*, 921 F.3d 484, 491–92 (5th Cir. 2019). Defendants do not dispute that force was employed during the first incident; instead they contend that it was necessary and not excessive in light of English's allegedly recalcitrant conduct.

for about 20 minutes. By this time Truly Dillon and numerous other officers had joined Mersereau and Phillips. Mersereau and Phillips then escorted English—who was now not only handcuffed behind his back but also shackled at the ankles—back down the tier to cell #11. English contends that they made it all the way down the tier without incident (English was complaining that his face and head hurt and that he felt like he might pass out) but that when they got in front of cell #11 Mersereau and Phillips slammed him again onto the floor. (*Id.* at 23, 25, 26). This time when they went down English landed inside of the cell with Mersereau on top of him. (*Id.* at 26, 27). English felt blows to the back of his head and his ribs; one of the officers had his hand on English's neck. (*Id.* at 27). The alleged attack lasted for about a minute. (*Id.* at 29).

English denies that he was resisting when this second attack allegedly occurred. In fact, he points out that he couldn't have been resisting because on top of being handcuffed and shackled he was also disoriented and in pain because of the first assault. (*Id.* at 30). And there could not have been a plausible concern of a weapon because English had been strip searched immediately before being brought to cell #11.

Mersereau and Phillips then walked English back down the tier to see the nurse. English complained to her that he couldn't breathe because of his ribs, that his head and neck hurt, and that he was going to pass out, which he did. (*Id.* at 31). The nurse determined that English had to see a doctor in the infirmary. The doctor directed that English be brought to the hospital emergency room. (*Id.* at 34). English spent two nights in the hospital due to a traumatic brain injury and broken ribs. (Rec. Doc. 68-14, Our Lady of the Angels Hospital records).

The Second Amended Complaint ("SAC") (Rec. Doc. 33) is the controlling pleading. In the SAC, English asserts that Mersereau and Phillips used excessive force in violation of the Eighth Amendment, this claim being brought under the auspices of 42 U.S.C. §§ 1983 &

1988. (SAC ¶¶ 22-25). This § 1983 claim against Mersereau and Phillips is brought against them in their individual or personal capacities, and it is the only federal claim identified in the SAC—it is the only claim to which the defense of qualified immunity could potentially apply.

English also asserts a state law negligence claim against Warden Bickham for failure to supervise/train,[10] and a state law intentional tort claim (battery) against Mersereau and Phillips.[11] (SAC ¶ 26, 28). English has not asserted a claim for negligent hiring. (Rec. Doc. 68, Amended Opposition at 19).

Finally, English asserts a claim for respondeat superior as to the state law claims only, against DPSC. (*Id.* ¶ 29). English has not asserted a § 1983 claim against DPSC. (Rec. Doc. 68, Amended Opposition at 22).

A jury trial was scheduled for December 5, 2022. (Rec. Doc. 48, Scheduling Order). Motions in limine have been filed. The Court sua sponte continued the jury trial and stayed

---

[10] Defendants misunderstand the nature of the claims against Warden Bickham, arguing in their Reply that the claims are really supervisory § 1983 claims or respondeat superior claims under state law. (Rec. Doc. 71-2, Reply at 10, 11). To the contrary, the claims against the warden are state law negligence claims based on his own alleged acts or omissions. The respondeat superior claims in this lawsuit are brought only against DPSC, which is the proper defendant for such claims.

[11] In their Reply, Defendants contend that English never alleged a battery claim and that it was raised for the first time in the Opposition. (Rec. Doc. 71-2, Reply at 4). Paragraph 28 of the SAC refers to a claim under La. Civil Code article 2315 for intentional acts. Under state law the facts alleged against Mersereau and Phillips undisputedly state a battery claim; any claim of surprise would be disingenuous.

In their Reply, Defendants also contend that English has attempted to raise a new claim for retaliation via his Opposition but this is not correct. English has not attempted to state a separate claim for retaliation. Rather, his theory of the case is that the motivation underlying the excessive force that Mersereau and Phillips allegedly employed was retaliation or punishment for the Massey incident described in footnote 6 above. Defendants' belief that English is attempting to add an unpleaded retaliation claim arises out of their failure to recognize the difference between a Fourth Amendment excessive force claim and an Eighth Amendment excessive force claim, the latter of which focuses on the subjective intent to punish. *Dawson*, 769 F.3d at 329 (Haynes, dissenting). The subjective motivations of the individual officers are of central importance in deciding whether force used against a convicted prisoner violates the Eighth Amendment. *Graham*, 490 U.S. at 398 (citing *Whitely*, 475 U.S. at 320-21). In contrast, a Fourth Amendment excessive force claim, which hinges solely on the objective reasonableness of the force used, does not delve into the officer's underlying intent or motivation. *Id.* at 397.

the motions in limine in order to allow sufficient time for the Court to issue this ruling on the defendants' motion for summary judgment. A telephone status conference with the Court has been scheduled for December 8, 2022. (Rec. Doc. 75, Order).

Defendants now move for summary judgment on all claims.

## II. Discussion

As noted above, Mersereau and Phillips are the only two defendants named in the § 1983 excessive force claim brought under the Eighth Amendment, which is the only federal claim raised in this civil action. Mersereau and Phillips move for summary judgment on the excessive force claim arguing that they are entitled to judgment as a matter of law on that claim. Mersereau and Phillips also argue that they are entitled to qualified immunity on the excessive force claim.

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quoting *Whitely v. Albers*, 475 U.S. 312, 319 (1986)). The "core judicial inquiry" whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019) (quoting *Hudson*, 503 U.S. at 6-7); *Cardona v. Taylor*, 828 Fed. Appx. 198, 201 (5th Cir. 2020) (quoting *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996)). As part of the inquiry courts analyze (1) "the extent of [the] injury suffered," (2) "the need for [the] application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019) (citing *Hudson*, 503 U.S. at 7; *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)). "The amount of force that is constitutionally permissible . . . must be judged by the

context in which that force is deployed." *Id.* (citing *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)).

A qualified immunity defense alters the usual summary judgment burden of proof. *Bourne*, 921 F.3d at 490 (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Once a government official asserts qualified immunity, the burden shifts to the plaintiff to "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id.* (citing *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)). All factual inference will be drawn in the plaintiff's favor. *Id.* (citing *Brown*, 623 F.3d at 253). In order to defeat qualified immunity the plaintiff must establish (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (citing *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014)).

It is undisputed that Mersereau and Phillips employed enough force to seriously injure English, who required emergency medical treatment followed by hospitalization. As to the need for the application of force, and the relationship between that need and the amount of force used, the Court turns to Mersereau's and Phillips's version of what occurred on the Sun tier on July 28, 2020.

Mersereau's declaration (no deposition is in the record) directly contradicts English's version of events insofar as Mersereau claims that English was violent, refused to comply with direct, verbal orders, and actively resisted Mersereau and other officers throughout the altercation. (Rec. Doc. 57-9, Mersereau declaration ¶ 40). Phillips's declaration, which was filed with the Reply, mirrors Mersereau's version of the events as recounted below. For simplicity, the Court cites to Mersereau's declaration only.

Mersereau states in relevant part that after the shakedown in front of cell #11 English was given a direct verbal order to enter the cell, which he refused. (*Id.* ¶ 3). Mersereau contends that English began hollering on the tier, causing a disturbance. (*Id.* ¶ 4). That's when Phillips took control of English's upper torso while giving him multiple verbal orders to enter the cell, which English again refused, while continuing to cause a disturbance. (*Id.* ¶ 5). English then twisted his upper torso, trying to break free of Phillips' grasp. (*Id.* ¶ 6). Mersereau then tried to assist Phillips by taking control of English's upper torso while directing English to the floor and giving him multiple direct orders to stop resisting. (*Id.* ¶ 7). Once English was on the floor he reluctantly complied with orders to stop resisting but he continued to yell up the tier. (*Id.* ¶ 9). The shackles were applied and at that point all use of force ceased. (*Id.* ¶ 12). English was then brought to the triage unit to see the nurse. It was at this point that pictures of English were taken.[12] (*Id.* ¶ 14).

Mersereau stated that English was in an agitated state when he and Phillips were escorting him back to cell #11 following the consultation with the nurse. (*Id.* ¶¶ 15, 16). Mersereau contends that as they approached cell #11 for the second time, English stopped walking and turned his body towards him, in direct violation of direct verbal orders, in order to verbally assault him. (*Id.* ¶ 17). Next, Mersereau states that "we" gave English direct verbal orders to enter his cell and to stop the verbal assault but he refused. (*Id.* ¶ 18). They directed English toward his cell all the while giving him orders to stop resisting but he refused. (*Id.* ¶ 19). Phillips and Mersereau then placed English in an off balance escort position and ordered him to walk. (*Id.* ¶ 20).

---

[12] The pictures taken after the first incident have been submitted as exhibits to English's opposition. (Rec. Doc. 68-8). Defendants clarify in their opposition that two of the pictures were taken following the first incident. (Rec. Doc. 74, Reply at 6).

According to Mersereau, English momentarily refused but then when he complied with their orders his forward momentum caused English and Mersereau each to lose their balance. (*Id.* ¶ 23). English and Mersereau then fell forward in the cell, and English landed on the floor with Mersereau falling on English's upper body. (*Id.* ¶ 22). English was given multiple orders to roll onto his stomach which he refused. (*Id.* ¶ 26). Mersereau and Phillips had to regain control of English's upper torso and roll him onto his stomach while they were also giving direct verbal orders to stop resisting. (*Id.* ¶ 27). Once English was on his stomach all use of force ceased. (*Id.* ¶ 28). English was then assisted to his feet and escorted once again to the nurse. (Id. ¶ 30).

Mersereau adds that he also went to the emergency room after the incident with English because he sustained a hematoma to his knee, which kept him out of work for two weeks. (*Id.* ¶¶ 38, 39).

English's version of the events on July 28, 2020 is completely at odds with the version provided by Mersereau and Phillips. In addition to the contradictory facts provided by English's own testimony, during his deposition he was questioned on each of the pertinent allegations made by Mersereau and Phillips, and he controverted each one. (Rec. Doc. 68-12, English deposition at 71-74). If English's version of events is credited insofar as he was not resisting on July 28, 2020, then the amount of force employed that resulted in the significant injuries that English sustained would be far excessive to the need. Similarly, if English was as compliant as he contends on that day, then there would have been no threat reasonably perceived by Mersereau and Phillips that would have justified the force that injured English. This is especially true considering that English had no weapon (Mersereau and Phillips had strip searched him), he was handcuffed, and shackled at the ankles. In addition to being cuffed and hobbled, English was also outnumbered two to one. Mersereau alone was 6'2" tall and weighed 320 lbs. at the time of the incident (Rec. Doc. 57-9,

Mersereau declaration ¶ 23), which is over a hundred pounds more than what English weighed. (Rec. Doc. 57-8 at 1, Medical Record). And the fact that Mersereau went to the emergency room after the incident with English because he sustained a hematoma to his knee—this injury being sustained when the officers went to the floor with English—is not probative of resistance on English's part because Mersereau could have just as readily sustained this particular injury under the factual scenario maintained by English.

The differing versions of what occurred leading up to English's significant injuries are so contradictory that this case presents the inescapable conclusion that someone is lying about what occurred on the Sun tier on July 28, 2020. Of course, the Court cannot make a credibility determination or weigh the evidence on summary judgment even where qualified immunity has been raised as a defense. The factual dispute in this case regarding the events leading up to English's injuries is genuine and material to the excessive force claim and the qualified immunity defense. If English's version of events is credited—in other words, that he was slammed and beaten as he described while putting up no resistance to merit such force, then he will have established a violation of his clearly established right under the Eighth Amendment to be free from excessive force, with the right to be free from such force having been clearly established at the time of the incident.

Enter the video evidence. In order to avoid the clear contradiction in the testimony of English, Mersereau, and Phillips—a contradiction that precludes summary judgment on the merits and on the defense of qualified immunity—the defendants rely on the video evidence taken from the jail. The defendants have provided the Court with Exhibits D-G on a CD, and according to the defendants the video evidence on that CD completely discredits English's version of events. The four video clips are taken from cameras at the far end of the Sun tier from cell #11 and from cameras directly opposite cell #11. Thus, for each of the two

incidents there are two video clips, one showing the events at a distance from the front of the Sun tier, and the other showing the two takedowns just outside of cell #11.

According to the defendants, the video evidence contradicts English's version of events insofar as it clearly shows English resisting the officers during both encounters. Defendants argue that the video evidence so blatantly contradicts English's version of events that his testimony must be disregarded as incredible, and as such it cannot create an issue of fact to preclude summary judgment.

The law is clear in this circuit that when video evidence *blatantly* contradicts the plaintiff's story and discredits it then his version of the facts will not be accepted as true. *Craig*, 49 F.4th at 409 (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019); *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). In such a case the court should view the facts "in the light depicted by the videotape." *Craig*, 49 F.4th at 409 (quoting *Scott*, 550 U.S. at 380-81).

The Court has viewed the video evidence offered as Exhibits D-G numerous times (there is no audio) and contrary to the defendants' characterization of the videos, they do not discredit English's version of events. In particular, at no time do the videos show that English exhibited any resistance at all. The shots from the end of the tier are too distant and grainy to make out anything useful. The shots taken in front of cell #11 do not demonstrate that English was resisting, and for the second incident when English contends that he was being beaten while he was on the ground, other corrections officers are standing in front of the scene blocking the camera's view. While the video evidence is helpful to understand the layout of the tier and each side's differing contentions, it does not resolve the key factual dispute in this case that precludes summary judgment. In fact, the video evidence is not more supportive of one version of events versus another; it could be considered consistent with either side's version of events.

In sum, the motion for summary judgment is denied as to the § 1983 Eighth Amendment excessive force claim asserted against Mersereau and Phillips. The motion is likewise denied as to the state law tort claims, whether grounded in negligence or battery or both, against these two defendants.

The motion for summary judgment as to the state law negligence claim against Warden Bickham for failure to supervise/train is denied but without prejudice. The Court denies the motion because as explained in footnote 10 above, the arguments made in support of the motion are based on a clear misunderstanding of the nature of the claims asserted against the warden. The warden may or may not be entitled to summary judgment on the failure to supervise/train claim but it is not for the Court to supply defenses to the claim.

Because the state law claims against Mersereau, Phillips, and Warden Bickham remain, the respondeat superior claim against DPSC also remains. The motion for summary judgment is therefore denied as to the respondeat superior claim against DPSC.

Finally, in briefing the issues for summary judgment, the parties included several evidentiary objections to the other side's evidence but the Court need not address those objections right now. The only exhibits relevant to the material factual dispute in this case are those that present the first-hand accounts of the events of July 28, 2020 provided by English, Mersereau, and Phillips, and the non-conclusive video clips.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 57)** filed by Defendants, the State of Louisiana through the Louisiana Department of Public Safety and Corrections, Sgt. Billy Mersereau, Michael Phillips, and W. Keith Bickham is **DENIED**.

**IT IS FURTHER ORDERED** that the motions in limine on file remain stayed pending the telephone status conference with the Court scheduled for **December 8, 2022, at 10:15**

**a.m.** If a notice of appeal is filed prior to the conference then the conference will be cancelled pending action by the Fifth Circuit.[13]

November 16, 2022

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[13] By mentioning the possibility of an appeal, the Court is not suggesting that appellate jurisdiction would exist in this case. The very recent Fifth Circuit case of *Byrd v. Cornelius*, 52 F.4th 265 (5th Cir. 2022), demonstrates why appellate jurisdiction may not be available in this case. But only the Fifth Circuit can determine its jurisdiction to hear an interlocutory appeal of the denial of qualified immunity.